UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                :

AARON COPPELSON, NIGHTENGALE NY1, LLC   :
DARIUSH FAKHERI,                               :
                                                :

                   Plaintiffs,         :                 19-cv-8481 (LJL)
                                                :

                 -v-                 :                ORDER AND OPINION
                                                :

RYAN SERHANT & NEST SEEKERS              :
INTERNATIONAL LLC,                             :
                                                :

                   Defendants.        :
                                                :
---------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/15/2021__

LEWIS J. LIMAN, United States District Judge:

      Defendant Ryan Serhant ("Serhant") moves, pursuant to Fed. R. Civ. P. 9(b) and

12(b)(6), to dismiss the first amended complaint filed against him by Plaintiffs Aaron Coppelson

("Coppelson"), Dariush Fakheri ("Fakheri"), and Nightengale NY1, LLC ("Nightengale," and

together with Coppelson and Fakheri, "Plaintiffs").  Dkt No. 44.  For the following reasons, the

motion is granted.

## BACKGROUND

      This case arises out of a purchase of real estate in Manhattan, New York for investment

purposes.  In 2015, Nightengale purchased real estate on Washington Street in lower Manhattan

(the "Tribeca Property").  Dkt. No. 38 ¶¶ 3, 10.  Nightengale is a California corporation, and

Coppelson and Fakheri are alleged to have served as its manager and principal, respectively.  *Id.*

¶¶ 1, 2.

      Serhant, who is a principal of Defendant Nest Seekers International LLC ("Nest

Seekers"), is alleged to have served as Plaintiffs' real estate broker for the purchase of the

Tribeca Property.  *Id*. at 1, ¶ 6.  Coppelson was introduced to Serhant on or around March 12, 2015 for the purposes of exploring investment in Manhattan real estate through a "like-kind" real estate exchange under Section 1031 of the Internal Revenue Code.  *Id*. ¶ 7.  A like-kind exchange permits the owner of an investment property, in certain circumstances, to defer tax liability on the gains from a property at the time of sale, provided that the owner reinvests the proceeds in a similar property.  *Id*.  On or around March 19, 2015, Coppelson's financial advisor and Serhant began to discuss opportunities for Plaintiff to invest in Manhattan, and on March 23, 2015, Serhant presented a list of properties he recommended exploring to Plaintiff.  *Id*. ¶ 8.  Through April and May 2015, Plaintiffs arranged the corporate initiation, administration, and transfer of funds to a qualified intermediary in New York to facilitate the purchase of property in New York.  *Id*. ¶ 9.

On May 11, 2015, Serhant represented to Plaintiff's financial advisor that the Tribeca Property was "a deal Plaintiff could not pass up."  *Id*. ¶ 10.  The complaint recites: "Among other inducements of Plaintiff, Defendant Serhant specifically represented that the property would be worth well over $5M in a short period of time and that the property was a 'gold mine'; that the seller was underwater and must sell now; that the proposed value was approximately 20% less than the comparable market; and that comparable properties were selling for square footage amounts far greater than that proposed by the . . . seller."  *Id*. ¶ 10.  The complaint alleges that as a further inducement for the sale, Plaintiffs were promised "a lease back by the seller for a substantial monthly rent and security deposit."  *Id*.

Plaintiffs allege that, as a result of these inducements, they forewent the opportunity to invest in a different property in Manhattan Beach, California.  *Id*. ¶ 11.  Plaintiffs further allege that they had the ability at that time "to purchase other properties that appeared far more

lucrative." *Id*.  They lost those opportunities, however, "due to Defendants' statements and the consummation of the contracts for the New York property." *Id*.

Plaintiffs allege that, after purchasing the property, they learned that Serhant represented both sides in the transaction and received referral fees that were never disclosed to Plaintiffs. *Id*. ¶ 12.  Plaintiff "also learned that Defendants between themselves made multiple statements to Plaintiff's tenant, acknowledging the intentional misrepresentations and concealments they made to Plaintiff over the course of the Tribeca transaction." *Id*.

Plaintiff bring causes of action for: (1) deceptive business practices under New York's consumer fraud statute, N.Y. Gen. Bus. L. (the "NYGBL") § 349; (2) fraudulent inducement and concealment; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; and (5) accounting.

## PROCEDURAL HISTORY

This action was initiated on or about July 15, 2019, by the filing of a summons and verified complaint in New York State Supreme Court, New York County.  Dkt. No. 1.  In addition to Serhant and Nest Seekers, the verified complaint named as defendants Plaintiffs' financial advisor, Elad Rahamim, and his employer, Wells Fargo Advisors, LLC ("Wells Fargo"); it also contained a cause of action for breach of contract.  *Id*.  On September 12, 2019, Serhant and Nest Seekers removed the action to this Court on grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1332(a)(1).  *Id*.[1]  Serhant and Nest

---

[1] By order of February 6, 2020, the Court noticed that the complaint failed to allege the citizenship of the two limited liability companies on each side of the case and thus failed properly to invoke diversity jurisdiction, *see Carter v. HealthPort Tech., LLC*, 822 F.3d 47 (2d Cir. 2016) ("In general, the citizenship of a limited liability company is determined by the citizenship of each of its members"), and gave Defendants leave to file an amended notice of removal properly alleging a basis for subject matter jurisdiction.  Dkt. No. 23.  Defendants did so on June 17, 2020.  Dkt. Nos. 31, 32.

Seekers filed an answer to the verified complaint on October 10, 2019. Dkt No. 13.[2]  Among their affirmative defenses was that the complaint failed to state a cause of action upon which relief could be granted.

On July 24, 2020, within the time permitted by the case management plan for an amended pleading, Dkt. No. 35, Plaintiff filed their first amended complaint ("FAC"), which added Fakheri as a plaintiff.  Dkt. No. 38.  By order dated July 29, 2020, the Court gave Defendants leave to file a motion to dismiss.  Dkt. No. 41.  On August 24, 2020, Defendants moved to dismiss the first amended complaint.  Dkt. Nos. 47, 48.  Plaintiff filed their memorandum in opposition to the motion to dismiss on September 25, 2020.  Dkt. No. 53. Defendants filed their reply on October 6, 2020.  Dkt. No. 55.

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-

---

[2] On January 15, 2020, Rahamim and Wells Fargo were voluntarily dismissed without prejudice in favor of binding arbitration.  Dkt. Nos. 19, 20, 22.

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Transnat. Mgm't Sys. II, LLC v. Carcione*, 2016 WL 7077040, at *3 (S.D.N.Y.  Dec. 5, 2016) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).  "To survive a Rule 12(c) motion, the complaint 'must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face.'" *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).

## DISCUSSION

### A.     Timeliness of Defendants' Motion

As a preliminary matter, the Court must determine whether Defendants' motion is procedurally proper.  Defendants are moving against the FAC.  Defendants previously answered Plaintiff's original complaint.  Dkt. No. 13.  Because the FAC added Fakheri as a plaintiff only, and no new factual allegations, Plaintiffs argue that the motion to dismiss is procedurally improper under Federal Rule of Civil Procedure 12(b).  That rule states, in relevant part, that motions asserting the defenses set out in that rule "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).  Plaintiffs contend that Defendants' motion should be denied outright on account of the earlier-filed answer.  Dkt. No. 53 at 4.

There is authority in support of the proposition that a court may consider a motion to dismiss for failure to state a claim filed after an answer if the defense of failure to state a claim

has been previously included in the answer.  *See Kalin v. Xanboo, Inc.*, 2009 WL 928279, at *8 (S.D.N.Y. Mar. 30, 2009) (holding that a motion to dismiss may be made pursuant to Fed. R. Civ. P. 12(b)(6) in response to an amended pleading after defendant has answered the original pleading); *Doolittle v. Ruffo*, 882 F. Supp. 1247, 1257 n.9 (N.D.N.Y. 1994) (permitting motion to dismiss after the filing of a responsive pleading where answer alleged that complaint failed to state a claim for relief); *Zebrowski v. Denckla*, 630 F. Supp. 1307, 1308 n.1 (E.D.N.Y. 1986) ("[A] motion based upon a purposed failure to state a claim upon which relief can be granted may be made even though an answer has already been filed."); *see also* Wright & Miller, *Federal Practice and Procedure* § 1361 (3d ed. 2020) ("[F]ederal courts have allowed untimely motions if the defense has been previously included in the answer.").  In addition, the Second Circuit has held that "[a] motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleading[] should be construed by the district courts as a motion for judgment on the pleadings under Rule 12(c)."  *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

Defendants' motion is arguably proper under rule 12(b)(6) because the pleadings have not closed with respect to the amended complaint and because the original answer contained an affirmative defense of failure to state a claim for relief.  In any event, even if Rule 12(b)(6) were technically not available, the Court would consider the motion pursuant to Federal Rule of Civil Procedure 12(c), which employs the same standards as Rule 12(b)(6) and which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c); *see Kalin*, 2009 WL 928279, at *8 (considering 12(b)(6) motion a motion for judgment on the pleadings, in the alternative); *Altman v. Inc. Vill. of Lynbrook*, 2020 WL 4587751, at *9 (E.D.N.Y. Mar. 31, 2020) (construing Rule

12(b)(6) motion as a Rule 12(c) motion in light of defendants' answer and amended answer).

    B.    <u>Nightengale's Lack of License</u>

Defendants argue that Nightengale is barred from prosecuting this lawsuit by Section 1312(a) of the New York Business Corporation Law.  That statute provides, in relevant part, that: "A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute."  N.Y. Bus. Corp. L. § 1312(a).  It is undisputed that Nightengale is not registered to do business in New York State.  "Section 1312 . . . was passed to ensure that those foreign companies that engaged in systematic intrastate transactions in New York undertook to conform to registration and taxation requirements before taking advantage of the state's courts as a form for its grievances."  *Nat'l Lighting Co., Inc. v. Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 566 (S.D.N.Y. 2009).  "Section 1312(a), which denies an unauthorized foreign corporation 'doing business' in this state capacity to sue here, employs a heightened 'doing business' standard, fashioned specifically to avoid unconstitutional interference with interstate commerce under the Commerce Clause."  *AirTran N.Y., LLC v Midwest Air Grp., Inc.*, 844 N.Y.S.2d 233, 237 (1st Dep't 2007).  A defendant relying on Section 1312 "bears the burden of providing that the [plaintiff] corporation's business activities in New York were not just casual or occasional but so systematic and regular as to manifest continuity of activity in the jurisdiction."  *Highfill, Inc. v. Bruce & Iris, Inc.,* 855 N.Y.S.2d 635, 637 (2d Dep't 2008) (quoting *S&T Bank v. Spectrum Cabinet Sales*, 668 N.Y.S.2d 641, 642 (1998)).  Defendants have not made the requisite showing.  Although, as Defendants note, the complaint alleges that Nightengale "do[es] business in the State of New York," Compl. ¶ 3, that averment falls short of the proof that the

business it does is systematic and regular.

B.     NYGBL § 349

Defendants move to dismiss the first cause of action, alleging a violation of NYGBL § 349 ("Section 349"), for failure to state a claim for relief and as barred by the statute of limitations.

"To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (per curiam)).  Thus, "plaintiffs claiming the benefit of section 349—whether individuals or entities . . . must charge conduct of the defendant that is consumer-oriented . . . .  Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S.2d 529, 532 (1985); *see also Genesco Ent. V. Koch,* 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (negotiation for rental of Shea Stadium was a "single shot transaction," not a typical consumer transaction and therefore not covered by section 349).  The critical question is whether "the acts or practices have a broad [] impact on consumers at large," *Oswego*, 623 N.Y.S.2d at 532, or "potentially affect[] similarly situated consumers." *Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d. 430, 449 (E.D.N.Y. 2013) (quoting *SQKFC, Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir. 1996)).

The New York Court of Appeals in *Oswego* relied on and adopted the opinion of Judge Weinfeld this district in *Genesco*.  The court there confronted the application of NYGBL § 349 to a real estate transaction.  Judge Weinfeld held that Section 349 did not provide a remedy in connection with a rental of property "involving complex arrangements, knowledgeable and

experienced parties and large sums of money." *Genesco*, 593 F. Supp at 752.  After noting that Section 349 provides "a powerful remedy for consumer fraud" designed to protect "the average consumer who requires the protection of a statute against fraudulent practices," the court held that it did not apply in a case where "[t]he only parties truly affected by the alleged misrepresentations . . . are the plaintiff and the defendants," and which did not involve an act or practice that affected the public interest.  *Id*.

Following *Genesco* and *Oswego*, the courts in this Circuit have repeatedly rejected Section 349 claims by aggrieved parties to real estate transactions.  In *Hayrioglu v. Granite Cap. Funding, LLC*, 794 F. Supp. 2d 405 (E.D.N.Y. 2011), for example, plaintiff, a forty-nine year old Turkish immigrant working as a livery cab driver who spoke limited English, alleged that the defendant mortgage company took advantage of him by arranging a "no-doc" mortgage in connection with the purchase of real estate.  *Id*. at 408-09.  The defendant allegedly "foisted upon him a debt that [they] knew he could not afford" and misstated his monthly income to arrange for the mortgage loan.  *Id*.  Relying on *Oswego*, the court dismissed the Section 349 claim, ruling that plaintiff had not alleged an act or practice with a broader impact on consumers at large.  In order to satisfy the requirements of Section 349 in the context of a real estate transaction, the court held, a plaintiff must allege "that the defendant affirmatively and publicly sought transactions with consumers."  *Id*. at 410; *see also Olivo v. Wells Fargo Bank, N.A.*, 2019 WL 1435010, at *6 (E.D.N.Y. Mar. 29, 2019) (dismissing claim of fraud in connection with a real estate transaction where plaintiff did not allege conduct directed at the public or that constituted a policy) *Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 511 (E.D.N.Y. 2014) (dismissing claim where plaintiffs made no allegations about defendant's broader practices or that the defendant sought out purchasers like the one at issue in the complaint among the public);

*Waverly Props., LLC v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 567 (S.D.N.Y. 2011) (dismissing claim related to the sale of 19 separate apartments as more akin to the large-scale, one-shot kind of transactions to which Section 349 does not apply).

The FAC fails to satisfy the requirements to plead a consumer fraud under the NYGBL. Plaintiff does not allege that Defendant initiated the real estate transaction, or that Defendant publicized the proposed transaction through advertisements or solicitations, or that Defendants' representations had or could have an impact on consumers generally or on the public interest. *See Sheehy v. New Century Mortg. Corp.*, 690, F. Supp. 3d 51, 74-75 (E.D.N.Y. 2010) ("[W]hen courts have found Section 349 applicable in the context of real estate transactions, they have usually done so where defendant published advertisements or otherwise solicited the general public."). Accepting the complaint's allegations as true and drawing all reasonable inferences in favor of the Plaintiffs, it alleges Plaintiff "was introduced to . . . Serhant," and that Serhant then perpetrated a fraud directed at Plaintiff through representations particular to a specific piece of property. Plaintiffs do not allege "conduct which affects the consuming public at large." *N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.2d 283, 291 (1995). The facts alleged constitute the paradigmatic private dispute "unique to the parties [that does not] fall within the ambit of the statute." *Oswego*, 623 N.Y.S.2d at 533; *see also Canario v. Gunn*, 751 N.Y.S.2d 310, 311-12 (2d Dep't 2002) (dismissing claim of misrepresentation in connection with "a single real estate transaction involving a single unique piece of property").

Plaintiffs argue that the complaint states a claim for relief under Section 349 because it alleges that Serhant acted as a dual agent, acting on behalf of both buyer and seller. Such dual agency is permitted under New York law only where both the buyer and the seller give their informed consent to such agency. N.Y. Real Prop. L. § 443(4)(a). The fact that Defendants

failed to do so, Plaintiffs say, shows an "untoward *modus operandi*" in violation of Section 349. Dkt. No. 53 at 10.

The conclusion that Plaintiffs have pleaded a Section 349 claim does not follow from this premise.  Section 443 of the New York Real Property Law is part of "a regulatory statute setting up a comprehensive plan to assure, by means of licensing, that standards of competency, honesty, and professionalism are observed by real estate brokers and salesmen."  *2 Park Ave. Assocs. v. Cross & Brown Co.*, 367 N.Y.S.2d 476, 478 (1975).  The New York Court of Appeals has held that the New York legislature intended "the deterrents and remedies provided *in the article* for misconduct by licensees [to be limited to] the regulatory sanctions of suspension, revocation, fine and reprimand."  *Id*. at 290.  The legislature intended to provide "criminal and civil penalties" only "to deter and remedy unlicensed activity to which the above-mentioned regulatory sanctions would obviously not apply."  *Id*.; *see also Sambrotto v. Bond N.Y. Props. Brokerage, LLC*, 2013 WL 685223, at *1 (N.Y. Sup. Ct. Feb. 20, 2013) ("Article 12-A of the Real Property Law does not contain any provision allowing a private right of action against licensed real estate brokers.").

It is inconceivable that the New York legislature, which limited claims against licensed brokers as dual agents to regulatory actions, at the same time intended such brokers to be subject to damages claims, on some occasions up to three times the amount of actual damages, under Section 349 of the NYGBL based on the identical conduct and nothing more.  To so hold would subject a licensed real estate broker to a private right of action and to the potential for statutory damages for what otherwise would be a mere regulatory violation.  It would also prioritize alleged regulatory violations of the New York Real Property Law over all other regulatory violations no one of which, in isolation and absent a showing the act or practice was consumer-

oriented, would give rise to a violation of Section 349.  The claim that Defendants violated Section 443 of the Real Property Law thus is not sufficient to establish that Plaintiffs have stated a claim under Section 349 of the NYGBL.  Whether or not there has been a violation of the Real Property Law, Plaintiffs must allege "acts or practices [that] have a broader impact on consumers at large." *Hayrioglu*, 794 F. Supp. 2d at 410.  For the reasons discussed above, Plaintiffs have not pleaded that Defendants' deceptive conduct had any impact beyond the relationship between the two parties, and accordingly, Plaintiffs have not stated a claim under Section 349 of the NYGBL.

Even if the complaint had adequately pleaded consumer-oriented misconduct, Plaintiffs' NYGBL claim is untimely.  Pursuant to New York Civil Practice Law and Rules § 214(2), an action under Section 349 must be commenced within three years of the date on which the plaintiff suffers the injury complained of.  *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 739 (2012).  A right of action under Section 349 accrues "when plaintiff has been injured by a deceptive act or practice violating Section 349." *Gaidon v. Guardian Life Ins. Co. of Am.*, 727 N.Y.S.2d 30, 35 (2001).  According to the complaint, Plaintiffs lost the opportunity to invest in the Manhattan Beach property at the end of May 2015.  Compl. ¶ 11.  Plaintiffs brought this action on July 15, 2019, more than three years after they allege that they lost the opportunity. The cause of action is therefore time-barred.

Plaintiff argues that Defendants waived a defense based on the statute of limitations by failing to raise it in their earlier answer.  This argument, however, is based on an erroneous statement of law.  "[A] party may raise an affirmative [defense] for the first time in a Rule 12(c) motion." *Arciello v. Cnty. of Nassau*, 2019 WL 4575145, at *4 (E.D.N.Y. Sept. 20, 2019); *see also Cowen v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 74 (S.D.N.Y. 2001) (determining that

raising a defense of res judicata for the first time in a Rule 12(c) motion "did not affect the Court's ability to entertain the res judicata defense").

    C.    <u>Fraudulent Inducement and Concealment</u>

"The essential elements of a cause of action for fraud are 'representation of a material existing fact, facility, scienter, deception and injury.'" *Cont'l Ins. Co.*, 639 N.Y.S.2d at 289 (quoting *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 176 N.Y.S.2d 259, 262 (1958)). "To state a claim for fraud or fraudulent inducement under New York law, a party must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Carcione*, 2016 WL 7077040, at *5. Statements that amount to "little more than mere puffery, opinions of value or future expectations . . . do not constitute actionable fraud." *Elghanian v. Harvey*, 671 N.Y.S.2d 266, 266 (1st Dep't 1998).

A claim for fraud or fraudulent inducement is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b). *FGIC v. Putnam Advisory Co.*, 783 F.3d 395, 402-03 (2d Cir. 2015). Under Rule 9(b), a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (holding that in order to plead fraud with particularity, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were fraudulent"). Allegations that are "conclusory and unsupported by assertions of fact" are not

sufficient to meet the Rule 9(b) standard. *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

Plaintiffs' claim for fraud and fraudulent inducement suffers from multiple defects. First, it fails to allege fraud with particularity as required by Rule 9(b). The allegations of fraud are contained in a single paragraph:

> On May 11, 2015, Defendant SERHANT communicated to Plaintiff through his financial advisor that the [Tribeca Property was] a deal Plaintiff could not pass up. Among other inducements of Plaintiff, Defendant Serhant specifically represented that the property would be worth well over $5M in a short period of time and that the property was a "gold mine; that the seller was underwater and must sell now; that the proposed value was approximately 20% less than the comparable market; and that comparable properties were selling for square footage amounts far greater than that proposed by the subject seller.

Compl. ¶ 10. Even if this paragraph could be construed to allege the who (Serhant), the when (May 11, 2015), and the what, it fails to allege except in the most general terms where the statements were made or what about them was false (or even that they were false). *See, e.g.*, *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (holding that the requirements of Rule 9(b) are not satisfied where "nothing in the complaint explains with adequate specificity how [the] statements were actually false or misleading."); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364 (S.D.N.Y. 2006) ("Under the pleading requirements, a complaint must explain, with adequate specificity, why the alleged false or misleading statements were actually false or misleading when made.").

Second, none of the statements Plaintiffs allege Serhant made are actionable under New York law. "The long-established rule in New York is that statements concerning the value of real property are generally not actionable under a theory of fraud or fraudulent inducement" because: (1) "representations as to value alone are generally matters of opinion upon which no detrimental reliance can occur"; and (2) "the doctrine of caveat emptor applies to real estate transactions such that a buyer has a duty to satisfy himself or herself of the quality of a bargained

purchase price without trusting a seller." *Newby v. Bank of Am. Corp.*, 2013 WL 940943, at *4 (E.D.N.Y. Mar. 8, 2013) (quoting *Simms v. Biondo*, 816 F. Supp. 814, 819–20 (E.D.N.Y. 1993)); *see also M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 558 (E.D.N.Y. 2010) ("[The doctrine of caveat emptor] imposes a duty on buyers of real estate to independently ascertain or verify the value of the property at issue.") (citing *London v. Courduff*, 529 N.Y.S.2d 874, 875 (2d Dep't 1988)); *Barkley v. United Homes,* 2012 WL 2357295, at *5 (E.D.N.Y. June 20, 2012) ("[I]t is settled law in New York that the seller of real property is under no duty to speak when the parties deal at arm's length and the mere silence of the seller, without some act or conduct which deceived the purchaser, does not amount to a concealment that is actionable as a fraud.") (quoting *M & T Mortg.*, 736 F. Supp. 2d at 558) (internal quotation marks and alterations omitted). Such statements constitute mere puffery or "dealers talk" or "sales talk," *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265, 276 (S.D.N.Y. 2004), and are correspondingly insufficient to state a claim for fraud.

The allegations of the complaint are squarely within this category. According to the complaint, Serhant told Plaintiffs that the property was a gold mine, that it would appreciate in value, and that it was priced at a level below comparable properties on the market. Those statement are mere opinion or puffery. A reasonable investor in real estate would recognize that a representation by a seller that that the property will increase in value and is priced favorably relative to the market is not a warranty that the buyer will make money on the transaction. Few sellers will state that the property is priced at an unfavorable level and that it will decrease in value or has no real investment potential. If the statements alleged here were held to be actionable, then every seller of real estate (or broker acting on behalf of such a seller) would be at perpetual risk of a fraud lawsuit from a disappointed purchaser. The law requires far more for

15

an allegation of actionable fraud in connection with a large real estate transaction. *See Carcione*, 2016 WL 7077040, at *6 (holding that a defendant's statement that a price represented "the bottom of the market" was a non-actionable statement of opinion); *N. Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 22 N.Y.S.3d 421, 421 (1st Dep't 2016) ("Defendants' alleged misrepresentations are not actionable as fraud because they are mere puffery, opinions of value or future expectations, rather than false statements of value.") (citation and internal quotation marks omitted); *Mecum v. Mooyer*, 152 N.Y.S. 385, 390-91 (1st Dep't 1915) ("[T]he only theory upon which a recovery could be had was that material false representations were made with respect to *existing facts*, as distinguished from estimates, expectations, opinions or conjectures with respect to the future.").

Moreover, entirely absent from the complaint are any allegations of fact supporting that the alleged "inducements" were false at the time they were made. Plaintiff complains, for example, that he was induced to purchase by representations that comparable properties were selling for prices per square foot far greater than that proposed by the seller and that the seller was "underwater," but he does not allege any facts supporting that those representations were false. *Woolgar v. Kingstone Cos., Inc.*, 2020 WL 4586792, at *10 (S.D.N.Y. Aug. 10, 2020) ("[P]laintiffs must do more than simply assert that a particular statement is false or misleading; rather 'they must demonstrate with specificity why and how that is so.'") (quoting *Rombach*, 355 F.3d at 174). At most, Plaintiff then is left with unactionable falsity by hindsight: Serhant's statements were false because, as it turned out, the property was not a gold mine and did not appreciate as much as hoped. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("We have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight.'") (quoting *Stevelman v. Alias Res. Inc.*, 174 F.3d 79, 85 (2d Cir. 1999); *Denny v. Barber*, 576 F.2d 465, 470

(2d Cir. 1978) (holding that corporate officials are only responsible for revealing material facts reasonably available to them)).

Courts have recognized some exceptions to the rule that opinions regarding the value of real estate property are non-actionable. *See, e.g.*, *Barkley v. United Homes, LLC*, 2012 WL 2357295, at *5 (E.D.N.Y. June 20, 2012). Some courts have found that such a representation can be actionable "where sellers concealed facts or induced buyers to refrain from making independent inquiries into the terms of a real estate deal." *Id*. Others have allowed fraud claims to proceed where plaintiffs alleged that defendants "deliberately steered plaintiffs to other members of the conspiracy in order to prevent their discovery of the true value of the properties at issue. *Id*. Finally, where plaintiffs are "'vulnerable, unsophisticated, first-time home buyers hoodwinked by a sophisticated, layered business operation involving multiple individuals and entities,' the parties are *not* at arm's length and therefore not subject to the doctrine of *caveat emptor*." *Id*. (quoting *M & T Mortg. Corp.*, 736 F. Supp. 2d at 559).

None of these exceptions are applicable here. Nothing in the complaint suggests that Serhant concealed any facts or induced Plaintiffs to refrain from making independent inquiries. Nor have Plaintiffs alleged that they were steered to conspirators to conceal the value of the properties. Finally, Plaintiffs were not unsophisticated. According to the Plaintiffs' allegations, they had a financial advisor and "were exploring and had the then-present ability to purchase other properties that appeared far more lucrative." Compl. ¶ 11. Thus, the complaint does not present allegations falling into any of the exceptions to the general rule that the principle of *caveat emptor* applies to representations made about the value of real estate.

Third, the complaint fails to allege facts supporting "a strong inference of fraudulent intent." *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014). Plaintiffs do

not allege that Defendants knew that the statements were false or were reckless with respect to their truth or falsity or engaged in "conscious misbehavior or recklessness." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 491 (S.D.N.Y. 2017). Even "misguided optimism . . . does not support an inference of fraud." *Chapman v. Mueller Water Prods., Inc.*, 2020 WL 3100243, at *18 (S.D.N.Y. June 11, 2020) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994)). Moreover, while the complaint can be read to allege that defendants "intended . . . to benefit financially from the subject transaction," Dkt. No. 53 at 12, such "generalized motives" which could be applied to every seller of real estate "do not constitute the type of 'concrete benefit' necessary to allege fraudulent intent." *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp.2d 137, 143 (S.D.N.Y. 2010).

Finally, the complaint does not allege cognizable injury or damages. Under New York law, the measure of damages for claims based on fraud (and negligent misrepresentation) is the "out of pocket" rule: loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount of value of the consideration exacted as the price of the bargain." *Sager v. Friedman*, 1 N.E.2d 971, 974 (1936). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (1996). Furthermore, "[u]nder the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." *Id.* at 1374; *see also Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 5518146, at *98 (S.D.N.Y. Sept. 14, 2020); *Connaughton v. Chipotle Mexican Grill, Inc.*, 53 N.Y.S.3d 598, 602 (2017) ("In New York . . . there can be no recovery of profits which would have been realized in the absence of fraud.").

Plaintiffs have not alleged that they suffered any out of pocket damages as a result of their purchase of the Tribeca Property.  Rather, they claim that they suffered damages because, as a result of the decision to purchase the Tribeca Property, they did not have the ability to (and did not) "purchase other properties that appeared far more lucrative," specifically a "California property [with] profit potential . . . far greater than the New York property."  Compl. ¶ 11.  Lost opportunity damages of this sort are not recoverable for a fraud claim under the law of New York.

### D.      Implied Covenant of Good Faith and Fair Dealing

A covenant of good faith and fair dealing is implied in every contract governed by New York law.  *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).  In order to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege a valid contract with the defendant.  *See Arroyo v. PHH Mortg. Corp.*, 2014 WL 2048384, at *9 (E.D.N.Y. May 19, 2014); *Kapsis*, 923 F. Supp.2d at 452.  Plaintiffs' claim of breach of the implied covenant must be dismissed for failure to allege this essential element.  Plaintiffs do not allege that they had a contractual relationship with Defendants.  Accordingly, a claim for breach of the implied covenant does not lie.

### E.      Unjust Enrichment

In order to plead a claim for unjust enrichment under New York law, plaintiff must allege: "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered."  *Georgia Malone & Co., Inc. v. Rieder*, 950 N.Y.S.2d 333, 336 (2012) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 471 (2011); *see also Myun-Uk Choi v. Tower Res. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018).  Where a contract exists between the parties, a

claim for unjust enrichment does not lie.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*,

879 N.Y.S.2d 255, 361 (2009) ("Where the parties executed a valid and enforceable written

contract governing a particular subject matter, recovery on a theory of unjust enrichment for

events arising out of that subject matter is ordinarily precluded"); *Goldstein v. CIBC World Mkts.*

*Corp.*, 776 N.Y.S.2d 12, 14 (1st Dep't 2004) ("A claim for unjust enrichment, or quasi contract,

may not be maintained where a contract exists between the parties covering the same subject

matter.") (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 521 N.Y.S.2d 653, 656

(1987)).  Similarly, where a complaint makes only "threadbare recitals of the elements of a cause

of action" for unjust enrichment, it must be dismissed.  *Jurgensen v. FelixStorch, Inc.*, 2012 WL

2354247, at *6 (S.D.N.Y. June 14, 2012).

The complaint contains only the conclusory allegations that "Defendants were unjustly

enriched to the extent to which they financially benefitted from Plaintiffs' transactions" and that

"[e]quity and good conscience require Defendants repay Plaintiffs the amount of the benefit

conferred on Defendants."  Compl. ¶¶ 38-39.  It does not contain any allegation that Serhant

benefitted or was enriched in any respect.  In their opposition, Plaintiffs argued that "Defendants

. . . clearly benefitted from commissions . . . improperly earned at the Plaintiffs' expense."  Dkt.

No. 54 at 13.  Even if that allegation—which is nowhere found in the complaint—is accepted as

true, Plaintiffs have not provided any specificity about these supposed commissions nor have

they explained, given that they do not allege that they paid any commissions, how commissions

paid by the seller were earned at Plaintiffs' expense.  *See Norcast S.ar.l v. Castle Harlan, Inc.*,

48 N.Y.S.3d 95, 98 (1st Dep't 2017) ("Although there is no black-and-white rule that the

payment complained of must have been made by the plaintiff itself, plaintiffs' claimed

entitlement to the fee is too speculative to support their allegation that defendant was enriched 'at

[their] expense.'").

F.    Accounting

"To state a claim for an accounting under New York law, a plaintiff must establish: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."  *Rosa v. TCC Commnc'ns, Inc.*, 2016 WL 67729, at *7 (S.D.N.Y Jan. 5, 2016).

Plaintiffs' allegations fail to state a claim for relief.  All they allege is that "[b]y virtue of the Agreement between the parties and law, and by their aforementioned wrongful acts, Plaintiffs demands [sic] a full, unfettered and timely accounting for all transactions and/or monies expended by Defendants pursuant to the Agreement and transactions stated therein."  Compl. ¶ 41.[3]

The complaint does not allege that money or property was entrusted to the defendant, that there is no adequate legal remedy, or that Plaintiffs made a demand for an accounting and were refused.  "Because the [P]laintiffs have sought money damages in . . . [their] claims, and because discovery as to the measure of damages would be available to them if they were to prevail on those claims, they can obtain all the information they seek in the existing claims at law."  *Grgurev v. Licul*, 229 F. Supp. 3d 267, 290-91 (S.D.N.Y. 2017); *see also IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (dismissing accounting claim where the relationship between the parties was merely contractual and plaintiff had "the tools of discovery" to pursue its claims); *Addax BV Geneva Branch v. E. of N.J., Inc.*, 2007 WL 1321027, at *2 (S.D.N.Y. May 4, 2007) ("Although [plaintiff] seeks an accounting to

---

[3] Notably the complaint does not allege an agreement.

establish its damages, it can make use of 'familiar discovery devices [to] obtain any information

… it need[s] to establish its allegations as to damages'").

## CONCLUSION

The First Amended Complaint is dismissed for failure to state a claim for relief and

failure to plead fraud with particularity.  The dismissal is without prejudice given the early stage

of the litigation and that Plaintiffs have not had a prior opportunity to amend their complaint in

response to Defendants' motion to dismiss.  The deadline for the filing of any further amended

complaint is February 12, 2021.


SO ORDERED.


Dated: January 15, 2021
       New York, New York                    _____
                                                         LEWIS J. LIMAN
                                                   United States District Judge